IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES of AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DUSTIN BOGART, and MARCY A. ) <br> BOGART, ) <br> ) <br> Defendants | Cv. No.  3:12-cv-0179 <br> District Judge Sharp/Magistrate Judge Brown. |

**To the Honorable District Judge Kevin H. Sharp**

## REVIEW AND RECOMMENDATION

Presently pending before the Magistrate Judge is Plaintiff's Motion for Summary Judgment against Southern Country Ranch ("Southern Country") on count II of the complaint. (Docket Entry ("DE") 92)  As discussed in more depth below, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion be **GRANTED**.

### I.   PROCEDURAL HISTORY

The defendant, Dustin Bogart ("Bogart"),[1] failed to file tax returns or to pay federal income taxes from 2000 through 2003. (Complaint, DE 1, p. 1)  Accordingly, the Internal Revenue Service ("IRS") determined Bogart's gross income and the resultant tax liability from "other" reporting sources. (Plaintiff's Statement of Material Fact ("Statement of Fact"), DE 91-2, p. 1)  The IRS assessed the outstanding tax liability, penalties, and interest against Bogart, Certified those assessments, provided notice to Bogart of the outstanding liability, and made demand for payment. (Declaration of Kenny Odell Justice, DE 91-5, p. 2 ¶¶ 5, 6)  The IRS also placed liens against Pennsylvania and Tennessee property, titled in the name of Southern

---

[1]   The Government only asserts that Southern Country is the alter ego of Dustin Bogart not of Dustin and Mary Bogart. (Plaintiff's Motion for Summary Judgment, DE 150, p.1)

Country Ranch ("Southern Country"), in which Bogart purportedly has an ownership interest. (Exhibits 14 & 15 to Defendant's Memorandum in Support of Cross-Motion for Summary Judgment, DE 119-1, 119-2)

The IRS was unsuccessful in securing payment from Bogart and the United States of America ("Plaintiff") instituted this action on February 13, 2012, to reduce these assessed taxes and penalties to final judgment.[2] (Complaint, DE 1, p. 1 ¶ 1) The complaint asserts claims against Bogart in count I for his outstanding tax liability and names Marcy Bogart and Southern Country as third parties who share ownership interests in real property located in Tennessee with Bogart. (Complaint, DE 1, p. 2 ¶¶ 7, 8) Plaintiff now seeks to foreclose upon the Tennessee property in satisfaction of the liens previously placed thereon. (DE 1) The funds derived from the sale of this property and levied under count II are intended to satisfy any judgment rendered against Bogart under count I. (DE 1)

Plaintiff moved for entry of default against Southern Country in Count II of the complaint for failure to defend on June 24, 2013 (DE 90), and, subsequently, moved for summary judgment as to count I of the complaint on July 1, 2013 (DE 91) and for judgment of default as to count II of the complaint on July 2, 2013. (DE 92) Clerk of the Court entered default as to Count II on July 30, 2013. (DE 100)

On October 17, 2013, the Magistrate Judge entered a Report and Recommendation regarding Plaintiff's motion for summary judgment and recommended that Plaintiff's motion be granted. (DE 127) Contemporaneously, the Magistrate Judge, finding a lack of evidence to substantiate Plaintiff's claims that Southern Country was the nominee or alter ego of Bogart,

---

[2] Plaintiff has also filed suit in the Middle District of Pennsylvania to pursue real property assets attributed to Bogart there. *See* United States of America v. Dustin B. Bogart, et al, Civil Case 4:12-cv-00347. The Pennsylvania property and any claim thereto is not considered as part of Plaintiff's claim or relief requested here.

2

ordered "Plaintiff to provide proof substantiating its right to the relief sought" upon date certain. (DE 132) Plaintiff, in compliance with the Order, has submitted evidence establishing the facts set forth below. (DE 150) Alternatively, Plaintiff moved for Summary Judgment asserting that "Bogart is the equitable owner of the [Tennessee] property . . . and that Southern Country Ranch merely holds title to the property as Bogart's nominee and/or alter ego for his use and benefit." (Plaintiff's M., DE 150, p. 1.)

With the addition of Plaintiff's Motion for Summary Judgment, the Magistrate Judge stayed entry of the instant Report and Recommendation to afford Bogart an opportunity to respond. (DE 152) Rather than address the issue presented for consideration here, Bogart chose to advance arguments previously considered and rejected by the Magistrate Judge under Count I of the complaint and to assert "new evidence" and additional claims against Plaintiff. Advancement of these arguments to the Magistrate Judge at this point is in error. Rather, these arguments should be made to the District Jourt in the form of an objection to the Magistrate Judge's Report and Recommendation as to Count I. As such, Bogart offers no objection to Plaintiff's argument that Southern Country is Bogart's nominee or alter ego.

This matter is properly before the court.

## II. FACTUAL BACKGROUND

The earnings from Bogart's contract trucking sole-proprietorship were made payable to Integrity Services, an unincorporated business trust organization ("UBTO"), rather than Bogart personally. (Attachments ("Att.") #14 & #15 to Plaintiff's Motion for Default Judgment ("Plaintiff's M."), DE 150-14, pp. 1-14; DE 150-15, p. 1.) The Articles of Organization and Incorporation for Integrity Services establish that Bogart is both the Executive Trustee and General Manager of the UBTO and that Bogart's home address at the time, RR5 Box 1100,

Sunbury, Pennsylvania, ("the PA property") was its operating address. (Att. #13 to Plaintiff's M., DE 150-13, p. 7.)

The earnings from contracts were deposited in Integrity Services' bank accounts at AmSouth Bank and Heritage Bank. (Att. #16 & # 17 to Plaintiff's M., DE 150-16, pp. 1-2; DE 150-17, pp. 1-13.) The banking agreements for the AmSouth account give the operating address for Integrity Services as 7075 State Route 147, Stewart, Tennessee and list Bogart and his wife, Marcy Bogart, as the only individuals authorized to draw on the account. (Att. #16 to Plaintiff's M., DE 150-16, pp. 1) The Heritage account gives the operating address for Integrity Services as 5290 State Route 147, Stewart, Tennessee—the home address of Mr. Jerry Speer—the current trustee for Southern Country. (Att. #17 to Plaintiff's M., DE 150-17, pp. 1.) The record reflects that both Bogart and his wife were authorized to draw funds from the account. (Att. #17 to Plaintiff's M., DE 150-17, pp. 10-13.) Bank records for these accounts also demonstrate that only Bogart or his wife ever authorized drafts on these accounts. (Att. #16 & # 17 to Plaintiff's M., DE 150-16, pp. 1-44; DE 150-17, pp. 1-13.)

Funds from these two accounts were not only used to pay expenses from Bogart's trucking business such as health care premiums, mobile telephone bills, and truck notes (Att. #19 to Plaintiff's M., DE 150-19, pp. 1-10); but were also dispersed to banking accounts held in the name of Simple Life Holdings at Northumberland Bank in Pennsylvania. (Att. #20 to Plaintiff's M., DE 150-20, pp. 7-39.) The signature card for the Simple Life Holdings' account lists Bogart and his wife as the only individuals authorized to draw on the account and lists the PA property as the operating address for Simple Life Holdings. (Att. #20 to Plaintiff's M., DE 150-20, p. 1.) Funds from this account were used to pay for Plaintiff's personal expenses such as purchases at Walmart and Sears, mortgage payments on the Pa property, and electric bills. (Att. #20 to

Plaintiff's M., DE 150-20, pp. 2-39.) As was the case with the accounts for Integrity Services, only Bogart or his wife have drawn funds on the Simple Life Holdings account. (Att. #20 to Plaintiff's M., DE 150-20, p. 1-39.)

On February 13, 2004, the PA property was transferred to Southern Country, a UBTO, for $21.00. (Att. #3 to Plaintiff's M., DE 150-3, pp. 1-2.) Bogart signed the deed transferring the property to Southern Country both personally and as the Executive Trustee for Southern Country. (Att. #3 to Plaintiff's M., DE 150-3, pp. 3-4.) On March 25, 2004, Southern Country quit claimed the PA property to the Bogart Family Living Trust. (Att. #4 to Plaintiff's M., DE 150-4, pp. 2-4.) Bogart was listed as the Trustee for both Southern Country and the Bogart Family Living Trust. (Att. #4 to Plaintiff's M., DE 150-4, p. 2.) On April 1, 2004, the Bogart Family Living Trust transferred, in fee simple, the PA property back to Southern Country. (Att. #5, Plaintiff's M., DE 150-5, pp. 2-4.) Again, Bogart acted as Trustee for both Southern Country and for the Bogart Family Living Trust. (Att. #5, DE 150-5, p. 2.)

In January of 2004, Southern Country entered into a purchase agreement for property located in Stewart, Tennessee. (Att. #8 to Plaintiff's M., DE 150-8, pp. 2-4.) Bogart signed the contract for purchase as the Trustee of Southern Country and his wife, Marcy Bogart, signed as Southern Country's Executive Secretary. (Att. #8 to Plaintiff's M., DE 150-9, p. 4.) The PA property address was listed as the operating address for Southern Country. (Att. #8 to Plaintiff's M., DE 150-8, p. 4.) Bogart tendered earnest money in the amount of $3,300.00 for the land transaction (Att. #8 to Plaintiff's M., DE 150-8, p. 4.), and the balance of the purchase price was tendered via cashier's checks issued on banks where UBTO's controlled by Bogart held their accounts. (Att. #9 to Plaintiff's M., DE 150-9, pp. 1-4.) With the exception of one check, each check was made at the direction of Marcy Bogart as the Executive Secretary of Southern

5

Country. (Att. #9 to Plaintiff's M., DE 150-9, pp. 1-4.) All of the checks were made payable to Phil Averitt, the grantor for the Tennessee property. (Att. 6 to Plaintiff's M., DE 150-6, p. 2.)

### III. ANALYSIS

**A. Standard of Review**

Summary judgment is appropriate where there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Miller v. City of Calhoun County*, 408 F.3d 803, 812-13 (6th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). A "genuine issue of material fact" is one which, if proven, could adduce a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden for establishing the absence of a factual dispute rests with the moving party. *Id.* at 249-50.

In deciding whether summary judgment is appropriate, the District Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for a trial." *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). In so doing, the district court must "draw all reasonable inferences in favor of the non-moving party" in its analysis of the pleadings, affidavits, and other submissions. *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013) (citing *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party is not entitled to trial solely on the basis of the pleadings themselves, but must provide more than conclusory allegations, speculation, and unsubstantiated assertions. *See Lujuan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888 (1990). Rather, at the summary judgment stage, the party opposing summary judgment "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252)

**B. Southern Country is Bogart's Alter Ego/Nominee**

Having determined that Bogart is subject to an outstanding tax liability under Count I, Plaintiff argues that it is entitled to levy against "all property and rights to property, whether real or personal, belonging to" Bogart. 26 U.S.C. § 6321. Further, Plaintiff asserts that "Bogart is the equitable owner of the [Tennessee] property . . . and that Southern Country Ranch merely holds title to the property as Bogart's nominee and/or alter ego for his use and benefit." (Plaintiff's M., DE 150, p. 1.) As such, the Tennessee property should be sold and the funds derived from the sale be used to satisfy, either in part or in full, Bogart's delinquent tax liability. Bogart and Southern Ranch have failed to respond to these assertions.

Levy on property owned by a defendant to satisfy a tax lien is governed by State Law. *See Comm'r v. Stern*, 357 U.S. 39, 46 (noting that state law applies to define "state-created rights, obligations, and liabilities."). Plaintiff advances Tennessee's law governing fraudulent transfers as controlling of the current issue. (Plaintiff's M., DE 150, p. 7.) However, application of this standard to this dispute is cumbersome and unwieldy. While Bogart may have fraudulently transferred monies between trust accounts to shelter his assets through the purchase of the Tennessee property, this property was purchased through an arms-length transaction and has never left Southern Country's possession. The Magistrate Judge concludes that the correct law to apply to this issue is Tennessee's law governing piercing the veil of corporations or trust entities.

Plaintiff is entitled to a lien against "not only the property and rights to property owned by the delinquent tax payer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent tax payer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005). Under Tennessee law, the determination of whether a trust is the alter ego of its trustee or executive manager is made by looking "not only at the organizational documents and surface transactions of the entities involved, but also at their 'economic realities.'" *Bracken v. Earl*, 40 S.W.3d 499, 502 (Tenn. Ct. App. 2000) (relying on *Frank Lyon Co. v. United States*¸ 435 U.S. 561 (1978)). The amount of control the individual exerts over the *res* of the trust, either directly or by the appointment of trustees who are "straw men," defines the "economic realities" in each instance. *Id.* at 502-03. As can be seen from the undisputed facts above, the Bogarts, jointly, have exerted exclusive control over all three trusts during the period of time that the Tennessee property was acquired by Southern Country.

In addition to being named as the Trustee and General Manager of Integrity services, Bogart and his wife have exclusive control over the *res* of Integrity Services and Simple Life Holdings. They control the disbursement of funds between the accounts and the use of funds in the bank accounts of each. In addition to being named as the Trustee and Executive Manager of Southern Country on the contract for purchase of the Tennessee property, the operating address given is the Pennsylvania property and it is undisputed that Bogart has control over all assets held by Southern Country.

Bogart directly controlled the transfers of the PA property, through a series of self-interested transactions, into and out of the possession of Southern Country and another UBTO under his direction—the Bogart Family Living Trust. Bogart also had control over the purchase of the Tennessee property as the Trustee of Southern Country and the cashier's checks tendered

for the purchase of the Tennessee property were made at the direction of Bogart's wife as the Executive Secretary of Southern Country. Bogart lived on the property for a time, Bogart paid electric bills from his personal accounts, and Southern Country has no assets of its own with which to mount a defense. Rather, Southern Country relies entirely upon Bogart to provide legal representation. (Motion for Reconsideration of Magistrate Judge's Order, DE 78, p. 3 ¶3.) Thus, the Magistrate Judge finds that Southern Country is the alter ego/nominee of Dustin Bogart. However, stripping away the façade of Southern Country's ownership does not end the matter. As noted *supra* at p. 1, the tax liability owed is that of Dustin Bogart individually, not the joint liability of Dustin and Marcy Bogart. Thus, Plaintiff's claims extend only to the ownership interest of the delinquent tax payer and state law governs that individual's ownership interest. *See United States v. Rogers*, 461 U.S. 677, 682-83 (1983).

According to Tennessee law, property acquired during a marriage is presumed to be held jointly as tenants by the entirety unless it is clear that the individuals intended otherwise. *See Dickson v. Long*, No. M2008-00279-COA-R3-CV, 2009 Tenn. App. LEXIS 295 at * 40-41 (Tenn. Ct. App. April 8, 2009) (citing *Bost v. Johnson*, 133 S.W.2d 491, 492 (Tenn. 1939)). While there is no deed that transfers the property into the possession of Dustin and Marcy Bogart that would rebut this presumption, the Magistrate Judge notes that both Dustin and Marcy Bogart exercised equal control over the bank accounts from which the monies were taken to purchase the Tennessee Property, the cashier's checks drawn to purchase the Tennessee property were made at the direction of Marcy Bogart, and she signed the purchase agreement as the Executive Secretary of Southern Country and initialed each page of the agreement just as did Dustin Bogart. (Att. # 8 to Plaintiff's M., DE 150-8, pp. 2-4.) As such, the Magistrate Judge finds the Tennessee property to be held by Dustin and Marcy Bogart as tenants by the entirety, and, thus,

9

Plaintiff's claims may not extend beyond the interest held by Dustin Bogart. *United States v. Rogers*, 461 U.S. 677 (1983).

## IV.     CONCLUSION

The undersigned finds that Southern Country is the alter ego and nominee of defendant Dustin Bogart. Further, the Magistrate Judge finds that the Tennessee property is jointly held by Dustin and Marcy Bogart as tenants by the entirety, which entitles Marcy Bogart to one-half of the proceeds of any sale ordered by the district court.

## V.     RECOMMENDATION

For the reasons stated above, the undersigned recommends that the Plaintiff's motion for Summary Judgment be **GRANTED** and the sale of the Tennessee property be ordered subject to any claims or objections that Marcy Bogart may assert under *United States v. Rogers*, 461 U.S. 677 (1983) or *United States v. Winsper*, 680 F.3d 482 (6th Cir. 2012).

The parties have fourteen (14) days of being served with a copy of this Review and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Review and Recommendation may constitute a waiver of further appeal. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012) (citing *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986)).

**ENTERED** this 12th day of February, 2014.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge